# United States District Court
# Eastern District of North Carolina
# Northern Division

| | |
|---|---|
| **Holly Lynn Koerber** and **Committee for Truth in Politics, Inc.**, *Plaintiffs*, v. **Federal Election Commission**, *Defendant*. | **Case No.** 2:08-cv-39-H |

## Amended Complaint for Declaratory and Injunctive Relief

Holly Lynn Koerber and Committee for Truth in Politics, Inc. ("CTP") complain against the Federal Election Commission ("FEC") as follows:

## Introduction

1. This is a facial and as-applied challenge to the FEC's secondary definition of "expressly advocating" at 2 U.S.C. § 100.22(b). This non-"magic words" definition is challenged as unconstitutional, facially and as applied to the ads set out herein ("Ads") and CTP's materially similar future ads, and as void for being beyond FEC authority under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* Count I.

2. This is also an as-applied challenge to the constitutionality of § 201 of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. No. 107-155, 116 Stat. 81, 88-89, titled "Disclosure of Electioneering Communications," which added a new subsection "(f)" to § 304 of the Federal Election Campaign Act ("FECA") that requires reporting of electioneering communications and contributors to groups making them. BCRA § 201 is called herein the "Reporting Requirement" for ease of identification. The Reporting Requirement is codified at 2

1

U.S.C. § 434(f). The Reporting Requirement is challenged as applied to the Ads and materially similar future ads, *see* Count II, and as applied to CTP itself, *see* Count III.

3. This is also a facial and as-applied challenge to FEC's enforcement policy implementing the major-purpose test from *Buckley v. Valeo*, 424 U.S. 1, 79 (1976), for imposing "political committee" ("PAC") status under 2 U.S.C. § 431(4). FEC's policy is set out in two documents. *See* FEC, "Political Committee Status . . . ," 69 Fed. Reg. 68056 (Nov. 23, 2004) ("*PAC-Status 1*"); FEC, "Political Committee Status," 72 Fed. Reg. 5595 (Feb. 7, 2007) ("*PAC-Status 2*"). The policy is challenged as unconstitutional, facially and as applied to CTP and its activities, and as void for being beyond FEC authority under the APA. *See* Count IV.

4. CTP seeks a judgment from this Court declaring these provisions unconstitutional and (as to FEC rule and enforcement policy) void under APA as challenged.

5. CTP also seeks permanent injunctive relief enjoining FEC from enforcing the provisions and enforcement policy as challenged.

## Jurisdiction and Venue

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 as a case arising under the First and Fifth Amendments, FECA, the judicial review provisions of the APA, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

7. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(e)(3), because Defendants are entities of the United States, Holly Lynn Koerber, who wishes to exercise the First Amendment right to receive information from CTP, resides in Elizabeth City, North Carolina, and CTP resides in North Carolina and has broadcast its ads in Elizabeth City.

## Parties

8. CTP is an issue-advocacy, nonstock, nonprofit, North Carolina corporation with its principal place of business in Cary, North Carolina.

9. Holly Lynn Koerber is a resident of Elizabeth City, North Carolina, one of the places where CTP has broadcast its issue advocacy, where she has been able to receive the ads described herein. She wants to continue exercising the First Amendment right to receive CTP's speech, but reasonably fears that CTP will be silenced and she will be unable to continue receiving CTP's materially-similar ads, all in violation of her First Amendment rights.

10. FEC is the federal government agency with enforcement authority over FECA. Its headquarters are in Washington, District of Columbia.

## Facts

11. CTP was incorporated in September 2008. It is exempt from tax under 26 U.S.C. § 501(c)(4) as an organization primarily devoted to social welfare.

12. CTP is not controlled by any candidate and lacks "the major purpose" of "primarily engag[ing] in regulable, election-related speech," *North Carolina Right to Life v. Leake*, 525 F.3d 274, 287 (4th Cir. 2008), so its major purpose is not the "nomination or election of a candidate," *Buckley*, 424 U.S. at 79.

13. As set out in its Articles of Incorporation, CTP's purposes are as follows:

> Purpose. The Corporation is organized for the purpose of promoting the social welfare of the people of North Carolina by: (a) Advocating honesty in government; (b) Advocating limited government; and (c) Engaging in any and all lawful activities that are appropriate to carry out and fulfill any or all of the foregoing purposes.

14. As set out in its Articles of Incorporation, CTP's prohibited activities are as follows:

> Prohibited Activities. Notwithstanding any other provision of these Articles, the

Corporation shall not, except to an insubstantial degree, carry on any activities not permitted to be carried on by an organization exempt from Federal income tax under Section 501(c)(4) of the Internal Revenue Code of 1986, as amended ("Code"), or the corresponding provision of any subsequent federal tax laws.

15. CTP broadcast an ad titled *Basic Rights* on television stations in Wilmington, North Carolina, that broadcast into Elizabeth City, North Carolina. *Basic Rights* was broadcast on stations in Pennsylvania, North Carolina, and Wisconsin on October 2, 2008, and October 3, 2008. CTP briefly aired an ad titled *Tragic, but True*.

16. The script of **Basic Rights** is as follows:

| VIDEO | AUDIO |
| --- | --- |
|  | **Announcer:** Senator Obama. |
| CG: VOTED AGAINST PROTECTING INFANTS | Why did you vote against protecting infants that survived late term abortions? |
| CG: NOT ONCE BUT FOUR TIMES; ILL. SB 1095, 3/27/01; ILL. SB 1662, 3/5/02; ILL. SB 1662, 4/4/02; ILL. SB 1082, 3/12/03 | Not once, but four times. |
| CG: CONGRESS UNANIMOUSLY SUPPORTED PROTECTIONS *Source: H.R. 2175;Congressional Record, 7/18/02; Page S. 7084* | Even Congress unanimously supported protections identical to those you blocked in Illinois. |
| CG: UPHELD BY SUPREME COURT *Source: Gonzales v. Carhart Et Al.; 4/18/07* | The Supreme Court upheld the ban on partial birth abortions. |
| CG: BARACK OBAMA CO-SPONSORED SENATE BILL 1173 *Source: S. 1173; Congressional Record; Introduced 4/19/07; Co-sponsored 5/11/07* | And yet today, you keep working to roll back this law. |
| CG: CALL SENATOR OBAMA CG: 202-224-2854 *Disclaimer: PAID FOR BY COMMITTEE FOR TRUTH IN* | Call Senator Obama. Tell him to stop trying to overturn these basic human rights. |

*POLITICS, 102-K COMMONWEALTH COURT, CARY, NORTH CAROLINA 27511. NOT AUTHORIZED BY ANY CANDIDATE OR CANDIDATE'S COMMITTEE.* | The Committee for Truth in Politics is responsible for the content of this advertising.

17. The Script of **_Tragic, but True_** is as follows:

| VIDEO | AUDIO |
|---|---|
| CG: TRAGIC. BUT TRUE. | **Announcer:** It's tragic, but true. |
| CG: MAJORITY OF SEX CRIMES ARE COMMITTED AGAINST A CHILD<br>*Source: U.S. Dept. of Justice, Bureau of Statistics* | Two thirds of all prisoners convicted of rape or sexual assault committed their crime against a child. |
| CG: EXPLOITS 7 TO 200 VICTIMS<br>*Source: U.S. Dept. of Justice, Bureau of Statistics* | Even worse, the average child predator exploits seven to two hundred victims in their lifetime. |
| CG: BARACK OBAMA VOTED TO ALLOW EARLY RELEASE FOR CONVICTED SEXUAL ABUSERS<br>*Source: ILL. SB 485, 3/11/99* | In the Illinois Senate, Barack Obama was the only member that voted to allow early release for convicted sexual abusers. |
| CG: CALL SENATOR OBAMA<br>CG: 202-224-2854<br>CG: SUPPORT THE PREVENTION AND DETERENCE OF CRIMES AGAINST CHILDREN ACT<br>CG: INNOCENT LIVES ARE AT STAKE<br>*Disclaimer: PAID FOR BY COMMITTEE FOR TRUTH IN POLITICS, 102-K COMMONWEALTH COURT, CARY, NORTH CAROLINA 27511. NOT AUTHORIZED BY ANY CANDIDATE OR CANDIDATE'S COMMITTEE.* | Call Senator Obama.<br><br>Tell him to support the Prevention and Deterrence of Crimes Against Children Act.<br><br>The Committee for Truth in Politics is responsible for the content of this advertising. |

18. CTP has not, and will not, coordinate the production and broadcast of these Ads or materially similar future ads with any candidate, campaign committee, political committee, or political party.

19. CTP reasonably fears that its Ads may be found to be express advocacy under 11 C.F.R. § 100.22(b). CTP's tax status and organic documents prohibit it from engaging in express advocacy. Furthermore, if the ads are express advocacy, they would constitute independent expenditures, which would require reporting as "independent expenditures" under 2 U.S.C. § 434(c)(1), which CTP has not done.

20. The Ads also meet the electioneering communications definition at 2 U.S.C. § 434(f)(3) and 11 C.F.R. § 100.29—because each was a "broadcast, cable, or satellite communication" that "[r]efers to a clearly identified candidate for Federal office" and "[i]s publicly distributed within 60 days before a general election for the office sought by the candidate," *id.* at § 100.29(a)—unless they constitute express advocacy, in which case they are excluded from the electioneering communication definition, *id.* at 100.29(c)(3).

21. If the Ads are not express advocacy but are electioneering communications, since CTP spent more than $10,000 in 2008 "for the direct costs of producing and airing" *Basic Rights*, CTP was subject to the Reporting Requirement. 2 U.S.C. § 434(f)(1).

22. Under the Reporting Requirement, once CTP reached the $10,000 trigger amount (the "disclosure date," *id.*), it was to have filed the required report "within 24 hours." *Id.*

23. CTP reached the $10,000 trigger amount ("disclosure date") on October 2, 2008, making its report due on October 3, 2008.

24. CTP has not filed the required report and so is currently in violation of the Reporting Requirement.

25. CTP reasonably fears that a complaint will be filed against it for noncompliance with the independent-expenditure reporting requirement or the electioneering-communication Reporting Requirement, that FEC will initiate an investigation and enforcement action, and that CTP may

6

Case 2:08-cv-00039-H   Document 63   Filed 05/21/10   Page 6 of 16

suffer penalties for noncompliance, all in violation of CTP's First Amendment rights.

26. CTP also reasonably fears that FEC may deem CTP to be a political committee under FEC's vague, overbroad, and unauthorized PAC enforcement policy, in violation of CTP's First and Fifth Amendment rights. *See PAC-Status 1*; *PAC-Status 2*. The policy employs a vague and overbroad totality-of-the-circumstances test for determining major purpose instead of the required "empirical judgment as to whether an organization primarily engages in regulable, election-related speech," *Leake*, 525 F.3d at 287.

27. CTP reasonably fears that a complaint will be filed against it for noncompliance with FECA's PAC requirements, that FEC will initiate an investigation and enforcement action, and that CTP may suffer penalties for noncompliance, all in violation of CTP's First and Fifth Amendment rights.

28. CTP intends to continue its issue advocacy by broadcasting ads that are materially similar to the Ads in that they will contain similar issue advocacy, but will similarly not be "'unambiguously related to the campaign of a particular . . . candidate,'" *id.* at 282 (*quoting Buckley*, 424 U.S. at 80) (emphasis added) and will not have an "electioneering nature," *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 470 (2007) ("*WRTL-II*").

29. In addition, CTP's materially similar ads will be consistent with ads described in the "safe harbor" in FEC's former regulation, 11 C.F.R. § 114.15, implementing *WRTL-II* because they will fit the following criteria:

> (1) Does not mention any election, candidacy, political party, opposing candidate, or voting by the general public;
> (2) Does not take a position on any candidate's or officeholder's character, qualifications, or fitness for office; and
> (3) Either:
> (i) Focuses on a legislative, executive or judicial matter or issue; and
> (A) Urges a candidate to take a particular position or action with respect to the matter or issue, or

7

(B) Urges the public to adopt a particular position and to contact the candidate with respect to the matter or issue . . . .

30. CTP is at risk for the irreparable harm of an investigation, an enforcement action, and possible penalties, and has no adequate remedy at law.

## Count I—Express Advocacy

31. CTP and Koerber reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

32. CTP and Koerber challenge FEC's secondary definition of "expressly advocating" at 2 U.S.C. § 100.22(b). This non-"magic words" definition is challenged as unconstitutional, facially and as applied to the Ads and CTP's materially similar future ads, and as void as beyond authority under APA.

33. In the United States District Court for the Eastern District of Virginia, FEC declared a similar communication was neither express advocacy nor prohibited under *WRTL-II*, yet the district court decided it was express advocacy under 11 C.F.R. § 100.22(b).[1] Consequently, CTP

---

[1] The ad at issue, titled *Change*, is as follows:
    (Woman's voice) Just what is the real truth about Democrat Barack Obama's position on abortion?
    (Obama-like voice) Change. Here is how I would like to change America . . . about abortion:
- Make taxpayers pay for all 1.2 million abortions performed in America each year
- Make sure that minor girls' abortions are kept secret from their parents
- Make partial-birth abortion legal
- Give Planned Parenthood lots more money to support abortion
- Change current federal and state laws so that babies who survive abortions will die soon after they are born
- Appoint more liberal Justices on the U.S. Supreme Court.

One thing I would *not* change about America is abortion on demand, for any reason, at any time during pregnancy, as many times as a woman wants one.
    (Woman's voice). Now you know the real truth about Obama's position on abortion. Is this the change that you can believe in?
    To learn more real truth about Obama, visit www.TheRealTruthAboutObama.com. Paid for by The Real Truth About Obama.

In *The Real Truth About Obama, Inc. v. FEC*, No. 3:08-cv-483 (E.D. Va.), *Change* was set out in the

8

Case 2:08-cv-00039-H   Document 63   Filed 05/21/10   Page 8 of 16

fears its present Ads and materially similar futures ads may also be considered express advocacy under 11 C.F.R. § 100.22(b).

34. If the Ads were found to be express advocacy under 11 C.F.R. § 100.22(b), CTP also fears that it would be in violation of 2 U.S.C. § 434(c)(1) and § 441d(a)(3), which require reporting and identification of independent expenditures, which it has not done, and that the expenditures would provide the statutory trigger for PAC-status under 2 U.S.C. § 431(4).

35. But the secondary express-advocacy definition at 11 C.F.R. § 100.22(b) is unconstitutional because the activity does not contain the so-called "magic words," which are required for an express-advocacy definition. *See, e.g.*, *Citizens United v. FEC*, 130 S. Ct. 876, 935 n.8 (2010) (Stevens, J., joined by Ginsburg, Breyer, & Sotomayor, J.J., concurring in part and dissenting in part).

36. FEC's secondary express-advocacy definition, 11 C.F.R. § 100.22(b), is unconstitutionally vague and overbroad, in violation of the First and Fifth Amendments, both facially and as applied to CTP's present Ads and materially similar future ads, and void as beyond authority under APA.

## Count II—Reporting Requirement Applied to Ads

37. CTP and Koerber reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

38. CTP and Koerber challenge the constitutionality of the Reporting Requirement at 2 U.S.C. § 434(f) (BCRA § 201) as applied to the Ads and materially similar future ads.

39. *Buckley* expressly excluded issue advocacy from the required disclosure of

---

complaint, Dkt. 1 at 5-6; FEC said it was neither express advocacy nor a prohibited electioneering communication, Dkt. 32 at 6; but the Court held it was express advocacy under 11 C.F.R. § 100.22(b), Dkt. 77 at 13-14 (mem. op. denying prelim. inj.; Sep. 24, 2008) (documents available on PACER).

"expenditures," imposing the express-advocacy construction to assure that the reach of the mandatory disclosure was not "too remote" or "impermissibly broad" and would reach only "that spending that is unambiguously related to the campaign of a particular federal candidate." 424 U.S. at 80.

40. While *Citizens United*, 130 S. Ct. 876 (2010), upheld the Reporting Requirement as applied to a movie that the Court held to be the functional equivalent of express advocacy and as applied to "pejorative" ads soliciting a commercial transaction, *id.* at 887, 915, it did not consider an as-applied challenge to genuine issue ads, such as CTP's Ads, which are protected from disclosure by *Buckley*.

41. CTP's Ads are genuine issue ads because they are not pejorative; do not mention an election, candidacy, political party, or challenger; do not take a position on a candidate's character, qualifications, or fitness for office; and do not emphasize the relevance of the information presented to the public official's candidacy. *WRTL-II*, 551 U.S. at 470; *Citizens United*, 130 S. Ct. at 887, 890, 915-16. The content of the Ads is entirely indifferent to the fact that the public official happens to be a candidate. Rather, the Ads focus on a legislative issue, take a position on that issue, inform the public of the positions of a public official on that issue, and urge the public to contact that public official with respect to the matter. *WRTL-II*, 551 U.S. at 470.

42. The Reporting Requirement is unconstitutional, in violation of the First Amendment rights to free expression and association, as applied to CTP's Ads and materially-similar future ads.

# Count III—Reporting Requirement Applied to CTP

43. CTP and Koerber reallege and incorporate by reference all of the allegations contained in

all of the preceding paragraphs.

44. As applied to CTP itself, the Reporting Requirement is unconstitutional under *Buckley*'s blanket reporting exemption for groups that can "show . . . a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties." 424 U.S. at 74.

45. The Reporting Requirement is unconstitutional, in violation of First Amendment rights to free expression and association, as applied to CTP.

## Count IV—PAC Enforcement Policy

46. CTP and Koerber reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

47. FEC's enforcement policy regarding PAC status is set out in two FEC policy statements: *PAC-Status 1* and *PAC-Status 2*. FEC's interpretation of the major-purpose test is a central element of FEC's PAC status enforcement policy. In *PAC-Status 2*, FEC explained that, after having initiated a rulemaking proceeding, it declined to adopt a rule for the major-purpose test, declaring that "the major purpose doctrine . . . requires the flexibility of a case-by-case analysis of an organization's conduct." *Id*. *PAC-Status 2*, 72 Fed. Reg. at 5601. Instead, it set out its vague and overbroad enforcement policy regulating major purpose, requiring FEC to engage in "a fact intensive inquiry," in order to weigh various vague and overbroad factors with undisclosed weight, requiring "investigations into the conduct of specific organizations that may reach well beyond publicly available statements," including all an organization's "spending on Federal campaign activity" (but not limited to spending on regulable activity) and other spending, and public and non-public statements, including statements to potential donors. *Id.*

48. *PAC-Status 2* identified the "major purpose" at issue in its major-purpose test as being

"*Federal campaign activity*," *id.* at 5605 (emphasis added), not the narrower "*nomination or election of a candidate*," which *Buckley* required as "the major purpose." 424 U.S. at 79 (emphasis added). While *MCFL* used "campaign *advocacy*," 479 U.S. at 252 (plurality opinion) (emphasis added), to "further the *election* of candidates," *id.* at 253 (plurality opinion) (emphasis added), and "campaign activity," *id.* at 262 (majority opinion), when speaking of the purpose at issue in the major-purpose test, it did so solely as synonyms for *Buckley*'s "nomination or election" requirement, which it cited and quoted, *id.* at 252 n.6 (*citing Buckley*, 424 U.S. at 79). There is no authority for FEC's reformulation of the major-purpose test to focus on "Federal campaign *activity*."

49. *PAC-Status 2* also indicated that FEC would consider other factors in its ad hoc, totality-of-the-circumstances, major-purpose test when it discussed its application of the policy to some 527 organizations in previous investigations. *PAC Status 2*, 72 Fed. Reg. at 5603-04. These included the fact that an entity spent much of its money "on advertisements directed to Presidential *battleground States* and direct mail *attacking* or expressly advocating," *id.* at 5605 (emphasis added), the fact that groups ceased activity after an election, *id.*, and the fact that they did not make disbursements in state and local races, *id.* In addition, FEC thought that it could determine a 527 groups major purpose from internal planning documents and budgets, *id.*, which would normally be protected by First Amendment privacy concerns and were only obtained because the organization was subjected to a burdensome, intrusive investigation. Major purpose was even based on a private thank-you letter to a donor, after the donation had already been made. *Id.*

50. *PAC-Status 2*, therefore, sets out an enforcement policy based on an ad hoc, case-by-case, analysis of vague and impermissible factors applied to undefined facts derived through

broad-ranging, intrusive, and burdensome investigations, often begun when a complaint is filed by a political or ideological rival, that, in themselves, can shut down an organization, without adequate bright lines to protect issue advocacy in this core First Amendment area.

51. Under the major-purpose test set out in *Buckley*, 424 U.S. at 79, however, PAC status may be determined by either an entity's expenditures, *MCFL*, 479 U.S. at U.S. at 262 (major purpose calculation looks at express-advocacy independent expenditures in relation to total expenditures: "should MCFL's independent spending become so extensive that the organization's major purpose may be regarded as campaign activity, the corporation would be classified as a political committee"); *Leake*, 525 F.3d at 287 ("an empirical judgment as to whether an organization primarily engages in regulable, election-related speech"), or by the organization's central purpose revealed in its organic documents, *MCFL*, 249 U.S. at 252 n.6 ("[O]n this record . . . MCFL['s] . . . central organizational purpose is issue advocacy."). Thus, the first test for major purpose requires a comparison of the entity's total disbursements for a year with its unambiguously campaign related and regulable expenditures, so that only the amount of true political "contributions" and "expenditures" would be counted. The second test requires an examination of the entity's organic documents to determine if there was an express intention to operate as a political committee, e.g., by being designated as a "separate segregated fund" (an internal "PAC") under 2 U.S.C. § 441b(2)(c). Because *Buckley*'s and *MCFL's* major-purpose test is an authoritative construction of the definition of "political committee," and a constitutional limit on the application of the political committee requirements of FECA, FEC's enforcement policy that does not comply with this construction is beyond FEC's statutory authority.

52. In *Citizens United*, the Supreme Court confirmed that PAC status is burdensome and subject to strict scrutiny. *Citizens United*, 130 S. Ct. at 897-98. PACs must comply with onerous

13

Case 2:08-cv-00039-H   Document 63   Filed 05/21/10   Page 13 of 16

requirements just to speak, *id.* at 897, so that PAC status functions as the equivalent of prior restraint, *id.* at 896. FEC's enforcement policy is unconstitutional as applied to CTP because imposing PAC status on such an entity is not narrowly tailored to preventing quid pro quo corruption.

53. Because FEC's PAC-status enforcement policy goes beyond any permissible construction of the major-purpose test, employs invalid regulations to determine whether the entity received a "contribution" or made an "expenditure," is unconstitutionally vague and overboad, and is "in excess of the statutory . . . authority . . ." of FEC, it is unconstitutional, in violation of the First and Fifth Amendments, and is void under 5 U.S.C. § 706.

## PRAYER FOR RELIEF

Wherefore, CTP prays for the following relief:

1. A declaratory judgment that FEC's secondary "expressly advocating" definition, 11 C.F.R. § 100.22(b), is unconstitutional and void under APA, both facially and as applied to CTP's Ads and materially similar future ads;

2. A declaratory judgment that the Reporting Requirement, 2 U.S.C. § 434(f), is unconstitutional as applied to CTP's Ads and materially similar future ads;

3. A declaratory judgment that the Reporting Requirement is unconstitutional as applied to CTP;

4. A declaratory judgment that FEC's PAC-status enforcement policy is unconstitutional and void under APA, both facially and as applied to CTP;

5. A permanent injunction enjoining FEC from enforcing these provisions and enforcement policy as challenged;

6. Costs and attorneys fees pursuant to any applicable statute or authority; and

7. Any other relief this Court in its discretion deems just and appropriate.

Dated May 21, 2010

                                                         Respectfully submitted,

/s/ Paul Stam  
Paul Stam, paulstam@bellsouth.net  
State Bar No. 6865  
STAM & DANCHI, PLLC  
P.O. Box 1600  
510 W. Williams Street  
Apex, NC 27502  
919/362-8873 telephone  
919/387-7329 facsimile  
*Local Counsel for Plaintiffs*

/s/ James Bopp, Jr.  
James Bopp, Jr., jboppjr@aol.com  
  Ind. Bar No. 2838-84  
Richard E. Coleson, rcoleson@bopplaw.com  
  Ind. Bar No. 11527-70  
Joseph A. Vanderhulst, jvanderhulst@bopplaw.com  
  Ind. Bar No. 28106-02  
BOPP, COLESON & BOSTROM  
1 South Sixth Street  
Terre Haute, IN 47807-3510  
812/232-2434 telephone  
812/234-3685 facsimile  
*Lead Counsel for Plaintiffs*

## Certificate of Service

I certify that on May 21, 2010, I electronically filed the foregoing document with the clerk of court using the CM/ECF system, which will notify the following CM/ECF participants:

David B. Kolker, dkolker@fec.gov
Claire N. Rajan, crajan@fec.gov
Harry J. Summers, hsummers@fec.gov
Federal Election Commission
999 E. Street, NW
Washington, DC 20436

R.A. Renfer, Jr.
U.S. Attorney's Office
Rm. 800, 310 New Bern Ave.
Raleigh, NC 27601
rudy.renfer@usdoj.gov

Anita S. Earls
Southern Coalition for Social Justice
6 Superior Ct.
Durham, NC 27713
anitaearls@gmail.com

/s/ James Bopp, Jr.
James Bopp, Jr.